1
2
3
4

<div align="center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

5
6
7
8
9
10
11

| | |
|---|---|
| CHERYL CALDWELL, | Case No. 23-cv-02818-EMC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |
| NORDIC NATURALS, INC., | |
| Defendants. | Docket No. 21 |

12
13
14
15
16
17
18
19
20

Plaintiff Cheryl Caldwell has filed a putative class action on behalf of herself and a nationwide class of those similarly situated against Defendant Nordic Naturals, Inc., based on the sale of its dietary supplement product "Ultimate® Omega 2X." Compl. ¶ 12. Plaintiff claims that Defendant's use of "2X" in conjunction with "Ultimate Omega" on the front of the package misleads consumers into thinking that there is double the amount of omega-3 ("omega") per serving than the amount of omega in the Nordic Naturals product named "Ultimate® Omega." Compl. ¶ 12. This matter is before the Court on Defendant's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) ("Def.'s Mot.").

21
22
23
24

Defendant argues that the Court should dismiss the following claims by Plaintiff: (1) California consumer protection statute claims; (2) claims for breach of express and implied warranty; (3) claims asserting quasi-contract, unjust enrichment, and restitution; (5) claims for injunctive relief; and (6) claims by absent non-Californian class members for want of standing.

25
26
27
28

For reasons stated below, the Court hereby **GRANTS** Defendant's motion to dismiss Plaintiff's quasi-contract, unjust enrichment, and restitution claims with leave to amend and grants Defendant's motion to dismiss claims for injunctive relief without leave to amend. The Court **DENIES** Defendant's motion as to all other claims.

<div style="writing-mode: vertical-rl">United States District Court<br>Northern District of California</div>

## I.   FACTUAL & PROCEDURAL BACKGROUND

Plaintiff Cheryl Caldwell alleges, on behalf of herself and a nationwide class of those similarly situated, that the labeling of Nordic Natural's dietary supplement product "Ultimate® Omega 2X" is deceptive.  Compl. ¶¶ 1-5, 12.  Nordic Naturals sells two products (among others) named Ultimate® Omega ("Ultimate Omega") and Ultimate® Omega 2X ("Ultimate Omega 2X").  Compl. ¶ 12.  Plaintiff alleges that the "2X" on the product in question misleads reasonable consumers to believe that the product "has twice the amount of Omega-3s per serving than that found in Defendant's *regular* Ultimate Omega product."  Compl. ¶ 12.  Ultimate Omega contains 1280 mg of omega per serving, while Ultimate Omega 2X contains 2150 mg.  Compl. ¶ 14.

 

*Id.*  Mathematically, for Ultimate Omega 2X to have double the amount of omega per serving than Ultimate Omega, the 2X product would contain 2560 mg of omega (i.e., 1280 mg multiplied by two).  Compl. ¶ 14.  Because Ultimate Omega 2X only contains 2150 mg per serving, Plaintiff alleges that it has 16% less omega than represented by Nordic Naturals.  Compl. ¶¶ 14, 15.

//

//

//

2

On or around July 2022, Plaintiff purchased Ultimate Omega 2X from a San Francisco Whole Foods Market.  Compl. ¶ 9.  According to Plaintiff, she purchased the product under the impression that it contained twice the amount of omega per serving than the Ultimate Omega product did, based on the "2X" and "Ultimate Omega" descriptions on the front of the package. Compl ¶ 9.  Plaintiff alleges that had she known that it did not contain double the omega per serving, she would not have purchased Ultimate Omega 2X.  Compl. ¶ 9.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim for relief.  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## III.   DISCUSSION

A.    Plaintiff's CLRA, FAL and UCL Deceptive Label Claims

Plaintiff alleges three claims that require finding that the Ultimate Omega 2X label is misleading to a reasonable consumer.  Specifically, the California Unfair Competition Law ("UCL") prohibits "unlawful, unfair or fraudulent" business practices.  Cal. Bus. & Prof. Code § 17200.  The California False Advertising Law ("FAL") prohibits "untrue or misleading"

3

advertisements.  *Id.* § 17200.[1]  And the California Consumer Legal Remedies Act ("CLRA")

prohibits "unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.[2]  As explained by the

Ninth Circuit in *Williams v. Gerber Products Company*, "[a]lthough the statutes differ slightly, the

basic inquiry is the same: Would the defendant's marketing likely mislead a reasonable

consumer?" 552 F.3d 934, 939 (9th Cir. 2009).  Thus, "to state a viable claim under any of those

statutes, Plaintiffs must allege facts showing that the advertisement in question is misleading to a

reasonable consumer." *Chuang v. Dr. Pepper Snapple Grp., Inc.*, 2017 WL 4286577, at *3 (C.D.

Cal. Sept. 20, 2017) (citing *Williams*, 552 F.3d at 938).

The Ninth Circuit recently discussed the reasonable consumer standard in *McGinity v.*

*Procter & Gamble Company*:

> [the reasonable consumer] standard requires that Appellants show
> that members of the public are likely to be deceived . . . The
> reasonable consumer standard requires more than a mere possibility
> that the label might conceivably be misunderstood by some few
> consumers viewing it in an unreasonable manner.  . . . Rather, the
> reasonable consumer standard requires a probability that a
> significant portion of the general consuming public or of targeted
> consumers, acting reasonably in the circumstances, could be misled.
> The touchstone under the "reasonable consumer" test is whether the
> product labeling and ads promoting the products have a meaningful
> capacity to deceive consumers.

69 F.4th 1093, 1097 (9th Cir. 2023) (internal citations and quotations omitted).

In general, dismissal for failure to state a claim in this context is appropriate only where it

is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."

*Williams*, 552 F.3d at 939.  To this end, this Court has previously explained that the reasonable

consumer analysis is "usually . . . a question of fact not appropriate for decision" on a motion to

dismiss.  *Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at *9 (N.D. Cal. Aug. 3,

---

[1] Cal. Bus. & Prof. Code § 17200 provides that: "As used in this chapter, unfair competition shall
mean and include any *unlawful, unfair or fraudulent business act or practice* and unfair,
deceptive, *untrue or misleading advertising* and any act prohibited by Chapter 1 (commencing
with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (emphasis
added).

[2] These statutes are referred to collectively as the "California consumer protection statutes" at
times throughout this order.

United States District Court
Northern District of California

1    2021) (Chen, J.).

2       Here, Plaintiff alleges that the Nordic Naturals product is false and deceptive because it

3 includes a "2X" moniker in the product name that misrepresents the strength or dosage of the

4 supplement.  Compl. ¶ 1.   Specifically, complainant alleges that the 2X moniker induces a

5 reasonable consumer to believe that the 2X product has twice the strength of the "regular"

6 Ultimate Omega product.  *Id.* ¶¶ 9, 12-13.  Because the 2X product contains only 2150 mg of

7 omega, and the regular product contains 1280 mg, the 2X products should contain 2560 mg (1280

8 x 2) per serving.  *Id.*  ¶¶ 3, 14.  However, Ultimate Omega 2X only contains 2150 mg (a 16%

9 shortfall).  *Id.*  Defendant argues that Plaintiff's claims fail as a matter of law because the product

10 label states on the front, in bold letters, that the contains 2150 mg of omega.  Def.'s Mot. at 5-6.

11 Accordingly, Defendant argues, a rational consumer would not assume that the product contains

12 anything more than the amount.  *Id.*  Further, Defendant argues, because the front label contains

13 the statement "Next Generation Fish Oil," and "More Powerful. Naturally." a consumer would not

14 reasonably think that the term 2X refers to twice the amount of another product.  Def.'s Mot. at 7.

15 Plaintiff contends she in fact was misled into thinking that the product was double ("2X") the

16 strength of the company's "regular" product, i.e., that 2150 mg equates to double the amount in

17 the regular product.  *Id.*

18       Three seminal cases from the Ninth Circuit that apply the reasonable person standard,

19 *McGinity*, *Moore*, and *Williams*, are instructive here.

20       In *McGinity*, the Ninth Circuit recently addressed allegations necessary to survive a motion

21 to dismiss a claim that a product's label is misleading.  69 F.4th at 1095-99.  In *McGinity*, the

22 court found plaintiffs failed to state a claim that a shampoo's label was misleading  *Id.* at 1096.

23 The front label read "Nature Fusion" and featured images of an avocado, green leaf, and gold

24 vitamin.  *Id.*  The court did not find that the label would mislead a reasonable consumer to believe

25 that the product contained only natural ingredients.  *Id.* The court recognized that the front label

26 might have been ambiguous as to whether the product contained only natural ingredients based on

27 the "Nature Fusion" tagline.  *Id.* at 1098.  However, because the back label listed synthetic

28 ingredients, the court found a reasonable consumer would not be misled by the package.  *Id.* The

Ninth Circuit clarified that circuit precedent did not preclude the defendant from relying on the ingredient list on the back of the product to dispel such ambiguity presented by the front of the label. *Id.* at 1097. In other words, the court held that where the front label is ambiguous, and the perhaps confusing meaning of the front label can be confirmed by reviewing the back label, a reasonable consumer would not be misled by the product. *Id.* at 1099.

But the *McGinity* court explained that there are limits to this principle. Specifically, the court there distinguished the case from *Williams v. Gerber Products Company*, 552 F.3d 934, 939 (9th Cir. 2008). In *Williams*, the court considered whether Gerber's Fruit Juice snacks, which had a front label bearing the words "fruit juice snacks," alongside pictures of fruits, was misleading. *Id.* at 936. The product at issue did not contain juice from the fruits pictured on the front and the first two, most prominent ingredients listed on the back label were corn syrup and sugar, as opposed to real fruit juice. *Id.* The court explained that the purpose of the ingredient list on a back label is to *confirm* representations made on the front, not to allow contradictory statements to be made on the front while using the back label to correct such falsities, shielding a defendant from liability. *Id.* at 939-40. Thus, the court found plaintiffs stated a claim in *Williams*. *Id.* The *McGinity* court endorsed *Williams* but distinguished *McGinity* on the ground that in *McGinity*, unlike in *Williams*, the back label served to confirm what might be confusing on the front, while in *Williams* the additional information was contradictory to the statements made on the front label. 69 F.4th at 1095-99.

*McGinity* also relied upon *Moore v. Trader Joe's Company*, 4 F.4th 874, 882 (9th Cir. 2021). In *Moore*, the court considered a label for 100% New Zealand Manuka Honey, and found it was not likely to deceive a reasonable consumer into believing the product contained only honey from bees harvesting the Manuka flower. *Id.* at 876-77. The *Moore* court determined that there may be some ambiguity as to what 100% meant, i.e., that it could be construed to mean that either Manuka flower was the only source of honey or that all of the honey was from New Zealand. *Id.* As the phrase on the front label was inherently ambiguous, it was appropriate to consider other information available to the consumer, including the rest of the packaging, price of the product, or general knowledge about how honey is made in determining whether a reasonable consumer

United States District Court
Northern District of California

would be misled.  *Id.*  The court found that while consumers are not expected to be experts in honey, one would be expected to know beekeepers cannot force bees to gather honey from only certain types of flowers.  *Id.*  Ultimately, the court found no claim was stated because common sense would dissuade a reasonable consumer from interpreting the purportedly ambiguous phrase to mean the honey was derived only from the Manuka flower nectar.  *Id.  McGinity* explained that *Moore* stands for the proposition that the front label need not be viewed in complete isolation to determine whether the label would mislead a consumer.  69 F.4th at 1095-99.  Other facts such as common sense or the back label informs whether a reasonable consumer would be confused by an ambiguous front label.  *See id.*

The following principles can be derived from the above cases. Where the label of a product is ambiguous, meaning a reasonable consumer would realize the label could have more than one meaning, the court should consider other information available to the consumer aside from the label to determine if a reasonable consumer would be misled.  To this end, a consumer might be expected to consider information on the back label of the product; common consumer knowledge and price of the product is also relevant to the analysis.  *See Moore*, 4 F.4th at 876-77; *McGinity*, 69 F.4th at 1095-99.  On the other hand, where the front of the product creates more than mere ambiguity, but instead  misleads a consumer into thinking one thing (i.e., that the product contained snacks made of fruit juice) that in fact is not true, the consumer is not required  to dig through the other information (including the back label) to dispel that falsity.  *Williams*, 552 F.3d at 939-40.  Otherwise, companies would be allowed to mislead a consumer into thinking one thing is true about the product, while shielding the company from liability through fine print.  *Williams*, 552 F.3d at 939-40.

Thus, the following questions are presented here:  (1) does the front of the label affirmatively mislead the consumer in the first instance; (2) to what extent is the label misleading (i.e., is it only ambiguous, putting the consumer on notice that it needs to seek more information); and (3) does other information that the consumer should be expected to consider dispel confusion on the front label, rendering the front label not misleading?  Each question is considered below.

//

7

1          1.        The front label is misleading.

2          The label at issue would plausibly mislead a reasonable consumer.   Specifically, "X" is a

3    multiplication symbol; "2X" is commonly understood to mean "two times" something else.  *See,*

4    *e.g.*, *Coleman v. Nestle USA, Inc.*, 2023 WL 5944137, at *1 (M.D. Fla. May 26, 2023) (granting

5    motion to dismiss complaint alleging that "2X more" means two more than X (or 3), as 2X is a

6    "well-understood idiomatic phrase," representing two times more than something else).  Given the

7    commonality of the symbol "X" to mean "times," it is plausible that a reasonable consumer would

8    think the product is two times the potency of the regular Ultimate Omega product.  *See id.*

9          The Ultimate Omega 2X label having stated the milligrams of omega contained in the

10   product does not change the outcome.  Defendant cites several cases standing for the proposition

11   that a label must be read in context of its surrounding language, and that common sense applies to

12   the reasonable consumer test.  *See* Def.'s Mot. at 5-8.  To be sure, a reasonable consumer could

13   not think that the product contains anything more than 2150 mg of omega, based on the statement

14   on the front of the label.  *See, e.g.*, *Whiteside v. Kimberly-Clark Corp.*, 2023 WL 4328175, at *4

15   (C.D. Cal. June 1, 2023) ("Reviewing the packaging as a whole, the Court finds that a reasonable

16   consumer would not 'simply assume' the Asterisked Products contain 100% natural ingredients

17   when she can 'plainly see' that the wipes are 70% plant-based by weight and made of natural and

18   synthetic ingredients.").  But that fact does not negate Plaintiff's claims.  Rather, Plaintiff does not

19   allege she believed the product contained more than 2150 mg of omega, but that she was under the

20   impression that the amount of omega in the 2X product equated to *two times* the amount included

21   in the original product.  *See* Opp. at 7-8 (citing Compl. ¶¶ 2, 12).  To this end, the 2150 mg label

22   does nothing to clarify whether the product is *two times stronger* than the original product on its

23   face.  Rather, the truth can only be learned by viewing the 2150 mg amount in relation to the

24   contents of the original product – an entirely separate product with its own label.[3]

25         And inclusion of the phrases "Next Generation Fish Oil," and "More Powerful. Naturally."

26   on the front label does not changes the calculus as Defendant argues.  Def.'s Mot. at 6-7.  Both of

27   _____

28   [3] Whether a consumer should be expected to engage in such cross-referencing is discussed in the
     next two subsections (Section III.A.2 and Section III.A.3).

United States District Court
Northern District of California

those phrases are consistent with the interpretation that the product is two times the potency of the original product.  In other words, a reasonable consumer could think the product is two times "More Powerful. Naturally." and that the "Next Generation" product is better because it is again, twice the potency.  Indeed, Defendant does not take a position as to what the 2X moniker was meant to convey at all, if not two times the potency.  *See* Def.'s Mot. at 7.  Defendant suggests as an example, that the 2X moniker *could* mean second generation of product (i.e., the X is not a multiplier at all but a stand in for the word "generation").  *See* Reply at 9 ("2X does not unequivocally mean 'twice,' particularly given the presence of statements such as 'The Next Generation Fish Oil' and 'More powerful' on the label." (citing *Cinebase Software, Inc. v. Media Guar. Tr., Inc.*, 1998 WL 661465, at *1 (N.D. Cal. Sept. 22, 1998) ("Cinebase's current digital media data management product is Cinebase 1.X. Its next generation product is Cinebase 2.X."))).

In *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) the court clarified that when "there are two alternative explanations . . . plaintiff's complaint survives a motion to dismiss . . . [unless] defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible."  Here, Defendant is not even committing to an alternative meaning of the 2X moniker.  And its alternative explanation is hardly convincing.  While "1.X" or "2.X" may mean first or second generation, there is no period  in the moniker here.  "X" alone without the 1.X or 2.X most often refers to "times" as opposed to "generation." *See, e.g.*, *Coleman*, 2023 WL 5944137, at *1.  Accordingly, Defendant's weakly suggested alternative explanation is not "so convincing" as to render Plaintiff's explanation, that she viewed the moniker to mean two times the potency of the original product, implausible.  *See id.*

This outcome is bolstered by the fact that generally, dismissal for failure to state a claim in this context is appropriate only where it is "impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *de Dios Rodriguez v. Ole Mexican Foods Inc.*, 2021 WL 1731604, at *2, *3, *5 (C.D. Cal. Apr. 22, 2021) (quoting *Williams*, 552 F.3d at 939); *see also Sultanis v. Champion Petfoods USA Inc.*, 2021 WL 3373934, at *9 (N.D. Cal. Aug. 3, 2021) (Chen, J.) (the reasonable consumer analysis is "usually . . . a question of fact not appropriate for

United States District Court
Northern District of California

decision" on a motion to dismiss).[4]  Defendant fails to make such a showing here.

    2.    <u>A reasonable consumer would not be on notice to investigate further.</u>

The label at issue does not include the sort of inherent ambiguity which might put a consumer on notice to investigate the meaning of the label further.  Indeed, the front label of the Nordic Naturals product is less inherently ambiguous than the labels at issue in *Moore* and *McGinity*.  Specifically, in *Moore* the phrase "100% New Zealand Manuka Honey" was ambiguous in the sense that "100%" could relate either to the place of origin (New Zealand) or floral source (Manuka)—based on the syntax of the phrase.  4 F.4th at 876-77.  And in *McGinity*, the term "Nature Fusion" also presented inherent ambiguity because the term "Fusion" indicates a mix of products but does not specify that mix—putting the consumer on notice that the product might include both natural *and* synthetic ingredients with an unspecified portion of each.  69 F.4th at 1095-99.  Dissimilarly here, the "2X" moniker does not innately communicate two different meanings, leaving a consumer to investigate which applies.  "2X" commonly and clearly denotes "two times."  *Cf. Moore*, 4 F.4th at 876-77; *McGinity*, 69 F.4th at 1095-99.[5]

The additional information that could be investigated (that two times the omega of the original amounts to 2560 mg and not 2150 mg) is contradictory to and not a mere clarification of an ambiguity in the front label.  *Cf. Moore*, 4 F.4th at 876-77 (label reading "100% New Zealand Manuka Honey" consistent with honey being fully sourced from New Zealand).

Thus, a reasonable consumer would not have been on notice to investigate the meaning of

---

[4] The Court notes that while Plaintiff's theory as to how she was misled may present materiality issues, that element of the deceptive advertising claims was not raised by Defendant in its opening motion as a basis for dismissal. *See* Def.'s Mot. at 4-11.  Rather Defendant raised the issue of materiality for the first time, and only briefly, in its Reply brief.  Def.'s Reply at 6.  Accordingly, the Court does not consider materiality as a basis for dismissal here.  *See, e.g., Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("[A] district court need not consider arguments raised for the first time in a reply brief.").  This is appropriate in the present case as Defendant was well aware of Plaintiff's theory per the complaint and thus Defendant could have addressed materiality in its opening brief.  *See, e.g.*, Compl. ¶¶ 2-4 (explaining that consumers believed the Ultimate Omega 2X product's potency amounted to double the potency of the regular Ultimate Omega product).

[5] As explained above, the additional language on the front label of "More Powerful. Naturally." And "Next Generation Fish Oil" are consistent with Plaintiff's interpretation of 2X; these phrases thus would not put a consumer on notice of the need to investigate the meaning of "2X."

1   the front label further—even by reviewing the back label of the product at issue; this alone ends

2   the inquiry and distinguishes the case from *McGinity* and *Moore*.

3         3.    <u>The label's meaning is only clarified by cross-checking another product's label</u>

4                     <u>which a reasonable consumer should not be expected to do under these</u>

5                     <u>circumstances if at all.</u>

6         *McGinity* is distinguishable not only because the front label in the case at bar is

7   affirmatively misleading, but also because the only way for a consumer to learn the truth about the

8   product here is to cross-reference the milligrams contained in Ultimate Omega 2X, against the

9   ingredient label of *another product*: the regular/original Ultimate Omega product.

10  None of the Ninth Circuit opinions discussed herein stand for the proposition that a consumer

11  should be required to cross-reference *another product's ingredient list* to learn the truth about

12  information stated about the product on its label.  *Cf. Moore*, 4 F.4th at 876-77 (considering the

13  rest of the packaging, price of the product, and common information known to the consumer);

14  *McGinity*, 69 F.4th at 1095-99 (ingredient list on the back label relevant in applying the reasonable

15  consumer test); *see also Williams*, 552 F.3d at 939 (consumer should not be expected to check

16  ingredient list on the back label to learn the truth about contradictory statement on the front

17  label).[6]

18        District courts considering this  issue find that consumers should not be required to cross-

19  check information on other products to discern the precise strength or potency of a product.

20  In *Whitaker v. Pharmavite LLC*, for example, the court denied a motion to dismiss alleging

21  defendant's "Extra Strength" chewable was misleading.  2023 WL 3370729, at *1-5 (C.D. Cal.

22  May 9, 2023).  There, the allegedly misleading product was labeled "Extra Strength Chewable C"

23

---

24  [6] The two cases that Defendant points to in its statement of recent decisions, Docket No. 33, are

25  distinguishable on a similar basis.  Specifically, in each case the back label on the product at issue
    dispelled any confusion on the front which is not the case here.  *Slaten v. Christian Dior*

26  *Perfumes, LLC.*, Case No. 3-23-cv-00409-JSC (N.D. Cal. Oct. 19, 2023) (finding confusion
    caused by front label of foundation reading "24H Foundation" was dispelled due to information on

27  back label, which specified the product needed to be reapplied every two hours for SPF
    protection); *Bryan v. Del Monte Foods, Inc.*, Case No. 23-cv-00865-MMC (N.D. Cal. Oct. 19,

28  2023) (finding any confusion caused by front label stating "fruit naturals" dispelled by back label
    listing synthetic materials in the ingredient list).  And, in any event, these cases are not binding.

and "1,000 mg per serving" was listed on the front label. *Id* at *1. Based on the label, plaintiffs there understood that each tablet contained a higher dose of Vitamin C per tablet than the regular strength product. *Id.* However, each tablet in the Extra Strength product included only 500 mg of Vitamin C, though the back label advised the consumer to take two at a time. *Id.* The court denied the motion to dismiss, explaining that for a consumer to understand the Extra Strength product was only "Extra" due to its instruction to take two tablets, the court would have to take the Extra Strength Product off the shelf, and the Regular Strength Product of the shelf, and compare the labels. *Id.* at *4. The court there explained that "it is not reasonable to expect a consumer to cross-check a product's ingredient list against another product's list and then perform arithmetic to make sure she is comparing equivalent dosage volumes, all to ensure that the product she intends to purchase has the qualities it purports to have." *Id.* (citing *Al Haj v. Pfizer, Inc.*, 338 F. Supp. 3d 741 (N.D. Ill. 2018) (finding plaintiffs stated a plausible claim where a "Maximum Strength" product only provided more of the active ingredient where the buyer consumed more of the product compared to the "Regular Strength" version)). *See also Woodhams v. Pfizer, Inc.*, 2021 WL 5304309, at *3 (S.D.N.Y. Nov. 15, 2021) (finding that a reasonable consumer should not be expected to cross-check ingredient list in Maximum Strength and Regular Strength Robitussin to understand the strength of the product per dosage).

Likewise, in *Elkies v. Johnson & Johnson Services, Inc.,* the court determined that the packaging on the Infants' Tylenol was deceptive. 2018 WL 11328613, at *5 (C.D. Cal. Feb. 22, 2018). Namely, the package included a photo of a mother-and-baby along with the word "Infant." *Id.* The court determined that could lead a reasonable consumer to think that the product was tailored to infants compared to the Children's Tylenol. *Id.* As a consumer would only be able to dispel that belief by cross-referencing the Children's Tylenol product—which was an inappropriate expectation—the plaintiffs had stated a claim. *Id.*

As in *Whitaker* and *Elkies*, here the only way for the Plaintiff to learn the truth about the 2X moniker is to cross-reference the regular product and engage in arithmetic (i.e., adding the amount in the regular product by two and comparing to the 2X product) to discern whether the 2X product indeed included twice the amount of Omega than the original.

1       These cases are persuasive.  Unlike cross-referencing the back label of a product, it is not

2   clear if another product will be available for inspection at time of purchase—rendering it less

3   appropriate for a consumer to be expected to reference that label.  Indeed, the second product

4   could be out of stock or not carried at all by the store.  As it is not reasonable to expect a consumer

5   to engage in this cross-referencing, Plaintiff has stated a claim, notwithstanding the possibility one

6   could learn the truth about the product by comparing to the potency of another product.  *See, e.g.*,

7   *Whitaker*, 2023 WL 3370729, at *4; *Elkies*, 2018 WL 11328613, at *5.

8       Defendant argues that applying the *Whitaker* line of cases is like "fitting a square peg into

9   a round hole."  Reply at 2-4.  It argues that those cases are distinguishable because here, the

10  Omega 2X product is indeed stronger than the original whereas in *Whitaker* and similar cases, the

11  two products at issue were compositionally identical.  *Id.* at 3.  However, in *Whitaker*, for example

12  the product was labeled as "Extra," so the only relevant question was whether the product was

13  some amount stronger (it was not).  *Whitaker*, 2023 WL 3370729, at *4.  Here, the question is

14  whether the product contains *twice* the amount of Omega as the original because the alleged

15  misleading moniker "2X" implies *two times* the omega.  Thus, that the product here is some

16  amount stronger does not make *Whitaker* inapposite or render the label not misleading.  While

17  *Whitaker* might be a more egregious case of deceptive advertising (i.e., advertising something as

18  "Extra Strength" when the only thing extra about it was an instruction to take two pills) the

19  principle stated therein still stands.  Specifically, a consumer should not be expected to cross-

20  check the dosage in one product to figure out that another product is not what the front label

21  portrays it to be.  *See also Williams*, 552 F.3d at 939 (finding a consumer should not be expected

22  to check back label ingredient list to correct contradictory claim made on the front label).  The

23  wrongdoing here is a difference of degree, and not kind.

24      In summation, the 2X moniker on the product's front label could plausibly lead a consumer

25  to think that the Ultimate Omega 2X product contains twice the amount of omega as the regular

26  product.  As the Plaintiff would not be on notice to seek more information based on the front label,

27  and in any event, should not be expected to cross-reference the ingredients in another product to

28  dispel confusion, Plaintiff has stated viable California consumer protection statute claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

4.      Heightened pleading standard under Federal Rule 9(b)

Lastly as to these claims, Defendant states in its opening brief that the heightened pleading standard set forth in Federal Rule 9(b) applies to Plaintiff's California consumer protection claims. Def.'s Mot. at 4.  Accordingly, Defendant argues, Plaintiff's complaint must set forth the requisite level of particularity, i.e., the "who, what, what, when, where, and how" of the fraudulent conduct alleged.  *Id.* (citing *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019)). Though, Defendant does not argue that dismissal is appropriate on the basis of insufficient particularity of Plaintiff's claims.  *See generally* Def.'s Mot.; Def.'s Reply.  For the avoidance of doubt, the Court addresses this standard here.

Though Defendant is correct that Federal Rule 9(b) may apply to California consumer protection statute claims, this is not always the case.  Specifically, the Ninth Circuit has held that "fraud is not a necessary element of a claim under the CLRA and UCL."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  However, such claims, *may* rest upon a "unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim."  *Id.*  In such a situation, the claim is "said to be grounded in fraud," and thus must satisfy the particularity requirement of Rule 9(b).  *Id.*  For example, the court there applied the heightened pleading standard to the claims at issue, because those claims alleged a fraudulent course of conduct by car a company, including conspiring with dealerships and misrepresenting benefits of a program by the company over the course of time.  *Id.* On the other hand, where California consumer protection claims derive from purportedly misleading statements made on a product's label, rather than a course of conduct over time, as is the case here, the Ninth Circuit does not apply the heightened Federal Rule 9(b) standard.  *See, e.g.*, *McGinity*, 69 F.4th at 1096 (applying the typical pleading standard in reviewing a Federal Rule 12(b)(6) motion to dismiss UCL, FAL, and CLRA claims resting upon an allegedly misleading statement made on product's label).

Regardless, particularity is not an issue in the present case.  Indeed, the purpose of Rule 9(b) is to ensure that the defendant has enough information (the who, what, when, where, and how of the claimed fraud) so that "a defendant can prepare an adequate answer from the allegations." *Lorentzen v. Kroger Co.*, 532 F. Supp. 3d 901, 907 (C.D. Cal. 2021).  The allegations here are

14

1    clear as to the conduct that purports to have misled the Plaintiff.  Specifically, the complaint rests

2    upon Nordic Naturals including a "2X" moniker on the label of its Ultimate Omega 2X product,

3    which misled Plaintiff at the time of purchase.  Given this, and that Defendant presents no

4    argument as to how or why it could not prepare an adequate answer from the allegations,

5    Plaintiff's claims contain sufficient particularity to satisfy Federal Rule 9(b).  In any event, the

6    who, what, when, where, and how question are plainly evident here.

7          Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's  CLRA, FAL and

8    UCL Deceptive Label Claims.

9    B.    <u>Breach of Warranty Claims</u>

10          Defendant also argues that Plaintiff's breach of express and implied warranty claims

11    should be dismissed for failure to state a claim.  Def.'s Mot. at 11-14.  As explained herein the

12    Court finds Plaintiff adequately states a breach of warranty claim.

13          To prevail on a breach of express warranty claim, the burden is on the plaintiff to prove

14    "(1) the seller's statements constitute an "affirmation of fact or promise" or a "description of the

15    goods"; (2) the statement was "part of the basis of the bargain"; and (3) the warranty was

16    breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010); Cal. Com. Code

17    § 2313(1).  A statement does not constitute an express warranty unless it is "specific and

18    unequivocal."  *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).  Defendant

19    argues, primarily, that the 2X moniker does not amount to a specific and unequivocal statement

20    that the product contains twice the amount of omega as that found in the Defendant's regular

21    product.  Def.'s Mot. at 12.  For this reason, Defendant argues, Plaintiff's claim fails.

22          As a threshold matter, some courts in this district find that where a plaintiff has adequately

23    stated a California consumer protection claim, which is the case here, the plaintiff has also

24    sufficiently stated a claim for breach of express warranty.  *See, e.g.*, *Hadley v. Kellogg Sales Co.*,

25    273 F. Supp. 3d 1052, 1095  (N.D. Cal. 2017) ("[C]ourts in this district regularly hold that stating

26    a claim under California consumer protection statutes is sufficient to state a claim for express

27    warranty."); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014) (denying

28    defendant's motion to dismiss the breach of express warranty claim because a reasonable

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1  consumer could be misled by the packaging).

2      On the other hand, there are some district courts that find stating a claim for deceptive

3  advertising does not mean a plaintiff has necessarily stated a claim for breach of express warranty.

4  For example, in *Nacarino v. KSF Acquisition Corporation*, Judge Chesney found that a smoothie

5  mix claiming "20g HIGH PROTEIN," but that required the addition of milk to get that amount of

6  protein misled a reasonable consumer.  642 F. Supp. 3d 1074, 1086 (N.D. Cal. 2022).   At the

7  same time, the court held that the representation did not constitute an express warranty as to the

8  amount of protein included per serving or scoop.   An in *Cimoli v. Alacer Corporation*, Judge

9  Freeman held that Vitamin C gummies touting "750 mg Vitamin C," could mislead reasonable

10  consumers to believe that each gummy contained 750 mg of Vitamin C, but found the

11  representation was not an express warranty as to dosage per gummy.  546 F. Supp. 3d 897, 905

12  (N.D. Cal. 2021).

13      *Scott v. Saraya* recently addressed the tension between the two lines of reasoning.  2023

14  WL 3819366 (N.D. Cal. 2023) (holding that the plaintiff adequately stated an express warranty

15  claim because the representations "sweetened with monk fruit" or "monk fruit sweetened" could

16  reasonably mislead a consumer into believing that the product was entirely or predominantly

17  sweetened with monk fruit).  There, Judge Orrick explained:

18          The express warranty claims in *Nacarino* and [*Cimoli*] involved
            representations about precise amounts of protein and Vitamin C in
19          the products at issue, and failed because they did not amount to
            express statements that those amounts were found in each serving,
20          scoop, or gummy vitamin. But [plaintiff's] claims [here] do not rest
            on alleged misrepresentations about the specific amount of monk
21          fruit in each serving. Instead, she alleges that the statements
            misleadingly convey that the products are entirely or predominantly
22          sweetened with monk fruit. These allegations are more akin to some
            of the statements at issue in *Hadley*, where the plaintiff alleged that
23          the statement "lightly sweetened" implied that the products at issue
            were low in sugar when in fact the amount of added sugar was
24          "excessive."

25  *Id.* at *6-7 (internal citations omitted).

26      This Court is not persuaded that the question should turn upon whether the allegedly

27  misleading representation involves a specific dosage.  It is not clear why it matters whether the

28  allegation is quantified through a precise dosage (e.g., milligrams) or through description of the

amount (e.g., a light amount of an ingredient) in deciding whether an express warranty was made and/or breached.  Returning to first principles, the question is whether a promise was conveyed by the seller and thus became "a term of the parties' contract" and subsequently breached.  *See* Richard A. Lord, Williston on Contracts 4th § 52.45 (4th ed. 2004) (stating that an express warranty is "a term of the parties' contract"); Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance"); BLACK'S LAW DICTIONARY at 1582 (7th ed.1999) (defining "express warranty" as "[a] warranty created by the overt words or actions of the seller").  To this end, whether a plaintiff was promised 750 mg of Vitamin C per gummy, but received half that amount per gummy or whether a plaintiff was promised that the product contained low sugar but received a product with a high amount of sugar—in both instances a promise would have been made that was not kept.  *See id.*

Indeed, the precision of the promise is of no moment in this analysis, except to determine whether the representation is an actionable statement of fact as opposed to mere opinion or puffery.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (distinguishing between "[p]uffing" which is "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely" and "misdescriptions of specific or absolute characteristics of a product").  Interestingly, specific dosage claims—which *Saraya* would find *less* likely to be actionable—have less in common with puffery or opinion statements than descriptive phrases such as "lightly sweetened."  Namely, descriptive phrases characterize a product with less precision than specific dosage statements and are leave more room for opinion, e.g., as to what it means to be "lightly" sweetened.  No such opinion can be found as to the number of milligrams of an ingredient included in the product; that question is binary.  For the same reason, specific dosage claims are more amenable to evidence of breach than descriptive claims; it is easier to show that a gummy does or does not contain 750 mg of Vitamin C, whereas the line between high and low sweetness is less clearly defined.  Accordingly, this Court does not

find the line drawn in *Saraya* persuasive.[7]

Instead, the question is, at bottom, whether the contract can be construed as including a sufficiently specific warranty that was breached.  As explained above, the Court has determined that one plausible interpretation of the Ultimate Omega 2X label is that it promises twice the amount of omega as the regular product.  *See* Section III.A.1.  Even assuming the label could be interpreted differently, at the motion to dismiss phase, the Court must construe the representation in the light most favorable to the Plaintiff.  *Saraya*, 2023 WL 3819366, *7 (holding that the court at this stage must accept all "allegations as true and [draw] all reasonable inferences in [plaintiff's favor"); *Toce v. Rentch*, 2018 WL 280024, *4 (S.D. Cal. Jan. 3, 2018) (citation omitted) (similar); *see also In re Ferrero Litigation*, 794 F. Supp. 1107, 1118 (S.D. Cal. 2011) (holding that a final determination as to what statements create express warranties should often not be determined on a motion to dismiss).  Construing the terms in this way, Plaintiff has stated a claim for breach of express warranty; it is undisputed that the amount of omega in the product (2150 mg) is not double the original (i.e., double 1280 mg which amounts to 2560 mg).

Defendant's reliance on *Watkins v. MGA Entertainment Inc.* does not require a different outcome.  574 F. Supp. 3d 747, 756 (N.D. Cal. 2021).  There, the court found that the phrase "Age 3+" did not constitute an express warranty that a toy was safe for children over the age of 3. But the court in *Watkins* acknowledges that the statement "Age 3+" is "the sort of general statement about *product safety* that has been found insufficient to give rise to an actionable express warranty." *Watkins*, 574 F. Supp. 3d at 756 (emphasis added).  The statement was imprecise. As Plaintiff correctly points out, this is not a product safety case, and outside of that context, courts apply a less exacting standard in determining whether a breach of express warranty claim has been stated.  *Compare Smith v. LG Elecs. U.S.A.*, Inc., 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) (finding "vague" statements as to reliability and dependability such as "safe for residential

---

[7] Additionally, the case at hand is meaningfully distinguished from *Nacarino* and *Cimoli*.  The representations in both of those cases were literally true statements, even if misleading.  In *Cimoli*, the product did contain 750 mg of Vitamin C, though in the form of two gummies as opposed to one.  546 F. Supp. 3d at 905.  And in *Nacarino*, the consumer would indeed receive 20g of protein by adding milk to the mix as directed.  642 F. Supp. 3d at 1086.  In the case at bar the 2X Ultimate Omega product is not two times anything; it is false in that regard from any vantage point.

United States District Court
Northern District of California

1    use" are not actionable statements) *with* *Hunt v. Sunny Delight Beverages Co.*, 2018 WL

2    4057812, at *5 (C.D. Cal Aug. 23, 2018) (finding that in the case of a product with photos of fruits

3    on the label, "[p]laintiffs have alleged that the Products' labels implicitly describe the Products as

4    containing the depicted fruits and fruit juices" and thus state an express warranty claim).  And

5    further, this Court is not bound by the holding of *Watkins* and does not find it persuasive to the

6    extent it warrants a different outcome here, for reasons discussed above.  Accordingly, Plaintiff

7    has sufficiently stated an express warranty claim to survive dismissal at this stage.

8          Plaintiff also states a claim for breach of implied warranty under UCC § 2–314 of the

9    UCC, which was adopted in relevant part by California.  *See* California. Cal. Com. Code § 2314.

10   Specifically, the implied warranty of merchantability provides that "a warranty that the goods shall

11   be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

12   goods of that kind."  UCC § 2–314(1); *accord* California. Cal. Com. Code § 2314(1).

13         Defendant identifies that under UCC § 2–314(2)(c) the plaintiff must show that "the

14   product did not possess even the most basic degree of fitness for ordinary use."  Mot. at 21 (citing

15   *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014)).  As

16   Plaintiff does not make such allegations, Defendant argues, Plaintiff's claim fails.  *Id.*  However,

17   As Plaintiff points out, there are other ways to show that a product is not merchantable.

18   Specifically, subsection 2(f) provides that: "Goods to be merchantable must . . . conform to the

19   promises or affirmations of fact made on the container or label if any."  UCC § 2–314(2)(f);

20   *accord* California. Cal. Com. Code § 2314(2)(f).   Under this subsection, a plaintiff only needs to

21   show that the goods "do not conform to the promises or affirmations of fact made on the container

22   or label if any."  *Milan v. Clif Bar & Co.*, 2019 WL 3934918, at *3 (N.D. Cal. Aug. 20, 2019); *see*

23   *also In re 5-hour ENERGY Mktg.* 2017 WL 385042, at *11 (C.D. Cal. Jan. 24, 2017) (finding

24   plaintiff need not allege the product lacked fitness for ordinary use and could state a breach of

25   implied warranty claim based upon misrepresentations made on the product's label); *Clark v.*

26   *Hershey Co.*, No. C 18-06113 WHA, 2019 WL 913603, at *6 (N.D. Cal. Feb. 25, 2019) (similar).

27         Where an implied warranty claim rests on a representation made on the label, the analysis

28   merges with that for the breach of express warranty claim.  *See Hadley*, 273 F. Supp. 3d at 1096

United States District Court
Northern District of California

(citing *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014)).  If both claims hinge on representations made on the label of the product—which in this case, they do—the two claims rise and fall together.  *See DiGiacinto v. RB Health (US) LLC*, No. 22-CV-04690-DMR, 2023 WL 2918745, at *9 (N.D. Cal. Apr. 11, 2023) (holding that the plaintiff sufficiently alleged a breach of implied warranty because they sufficiently alleged a breach of express warranty, and both claims hinged on the representations on the label of the product).  Since the Court has found that Plaintiff has adequately alleged a breach of express warranty claim, the Court finds that Plaintiff has adequately alleged a breach of implied warranty claim at the motion to dismiss stage. Accordingly, Plaintiff's breach of warranty claims survive.

C.   Claims for injunctive relief

Defendant also moves to dismiss Plaintiff's claims requesting injunctive relief, arguing that Plaintiff lacks standing, as no threat of similar, future harm exists; Plaintiff is now aware of the omega content in the product, and thus she cannot be deceived again.  Def.'s Mot. at 15.

A plaintiff must demonstrate constitutional standing separately for each form of relief requested.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 185 (2000).  The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability.  *Lujan v. Defs. Of Wildlife,* 504 U.S. 555, 560-61 (1992).  A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical."  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).  Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) is instructive in this context.  There, the plaintiff purchased the defendant's flushable wipes product, but later learned the wipes were not flushable.  *Id.*  at 961-62.  The Ninth Circuit resolved a split of authority

1    amongst district courts, explaining that a plaintiff does not necessarily lack standing to seek

2    injunctive relief just because she has learned that the label of a product is false during litigation.

3    *Id.* at 970.  There, the plaintiff alleged that she desired to purchase the wipes again in the future.

4    *Id.* at 970-71.  Although plaintiff became aware that the "flushable" labeling was false at the time

5    of her initial purchase, the court found that should she encounter a "flushable" package in the

6    future, the plaintiff would have no way of determining whether the representation "flushable"

7    remained false—absent purchasing the product and trying to flush it again.  *Id.*  Accordingly, the

8    plaintiff had standing to assert claims for injunctive relief.  *Id.*

9           There is a split of authority in district courts in this circuit applying *Davidson*.  Some

10   courts find that standing is present only when the true nature of the product can be learned *only*

11   through purchase of the product (e.g., attempting to flush a wipe like in *Davidson*).  Other courts

12   hold that even if the plaintiff can remedy confusion about the product before purchase (such as by

13   the looking at the back label) instead of post-purchase only, the plaintiff still has standing to assert

14   injunctive relief.

15          For example, in *Matic v. United States Nutrition, Inc.*, the court considered whether

16   plaintiffs, who had adequately stated a claim under the California consumer protection statutes that

17   the package was misleading, lacked standing for injunctive relief.  2019 U.S. Dist. Lexis 131576,

18   at *23 (C.D. Cal. March 19, 2023).  The product at issue was protein powder that contained 40

19   precent slack fill (i.e., empty space) in an opaque package.  *Id.* at *2.  Although the court found

20   plaintiffs stated a claim that they were misled into thinking there was more protein in the package,

21   the court explained that the case at bar was not like that in *Davidson*.  *Id.* at *23-24.  Specifically,

22   the plaintiff in *Matic* was now aware that he could learn how much protein powder was in the

23   product by reading the label, instead of assuming the product was full to the top as he did

24   previously.  *Id.* at *24.  He could therefore discern the nature of the product before buying it,

25   unlike the flushable wipes in *Davidson*.  *Id.*  Accordingly, the plaintiff in *Matic* lacked standing to

26   seek injunctive relief.  *Id.  See also Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at

27   *6 (C.D. Cal. Oct. 17, 2018) (finding plaintiff lacked standing for injunctive relief because "now

28   that [p]laintiff is on notice about potential underfilling, he could easily determine the number of

United States District Court
Northern District of California

21

1    pretzels in each package before making a future purchase by simply reading the back panel");

2    *Shanks v. Jarrow Formulas, Inc.,* 2019 WL 7905745, at *5 (C.D. Cal. 2019) (finding plaintiff

3    lacked standing because "in the future [plaintiff can] simply look at the label on Defendant's

4    coconut oil . . . and put it back").

5         Similarly, in *Cimoli v. Alacer Corp.*, 546 F.Supp.3d 897 (N.D. Cal. 2021) the Court

6    concluded that the Plaintiff did not have standing for injunctive relief in a product

7    misrepresentation claim.  There, the plaintiff alleged that the label on a Vitamin-C gummies

8    product, which read "750g Vitamin C," misled consumers into thinking that each gummy

9    contained 750 grams of Vitamin C.  *Id.* at 906.  The product's back label clarifies that the dosage

10   of Vitamin C is per serving (two gummies), and not per single gummy.  *Id.* at 903.  Judge Freeman

11   distinguished the case from *Davidson*.  *Id.* at 906.  Specifically, the court held that the plaintiff

12   lacked standing because the plaintiff knew to determine the dosage by consulting the back label

13   before purchase.  *Id.*  Therefore, the plaintiff could not plausibly allege that he faces a real or

14   immediate threat of similar, future harm.  *Id.* at 907

15        On the other hand, in *Vizcarra v. Unilever United States,* 2020 WL 4016810, *17 (N.D.

16   Cal. 2020), Judge Gonzalez Rogers considered whether the plaintiff, that stated a claim she was

17   misled about the ingredients of ice cream labeled "natural vanilla," had standing for injunctive

18   relief.  The ice cream in fact derived its vanilla flavoring from unnatural sources, as was reflected

19   by the ingredient list.  *Id.*  Judge Gonzalez Rogers held that the plaintiff  had standing to seek

20   injunctive relief.  *Id.* ("That the carton for the ice cream at issue contains a list of ingredients does

21   not change this conclusion.").  Similarly, in *Schwartz v. Bai Brands*, 2020 WL 5875019, at *8

22   (C.D. Cal. 2020), the court found the plaintiff had standing for injunctive relief.  The product

23   there, a beverage, included photos of two fruits on the front that led the plaintiff to think the

24   flavoring came from the fruits pictured.  *Id.* at *2.  The court rejected the argument that the

25   plaintiff lacked standing to assert injunctive relief,  despite the fact that the plaintiff needed only

26   review the ingredient list on the back to identify that the product did not actually contain a fruit

27   shown on the front, which the plaintiff would know to do post-litigation.  *Id.* at *8.

28        The Court finds that the reasoning in cases such as *Matic* and *Cimoli* is sound, and

United States District Court
Northern District of California

accordingly, Plaintiff here lacks standing to pursue injunctive relief.  Specifically, a foundational

prerequisite of standing is that the plaintiff must face the threat of suffering similar harm in the

future.  *Lyons*, 461 U.S. at 111.  But here, Plaintiff is now aware that twice the omega as that in

the regular Ultimate Omega product amounts to 2560 mg.  As the Plaintiff is now armed with this

information, it strains credibility to say that Plaintiff will purchase the Ultimate Omega 2X

product again, which states that it contains 2150 mg of omega, while thinking the product contains

double the amount of omega as the regular product.  And armed with the current knowledge,

Plaintiff can now take the step of comparing this product with the original product. It is difficult to

reason around this aspect of Plaintiff's circumstances to find that Plaintiff might be injured again

in a similar way in the future. *See, e.g.*, *Matic*, 2019 U.S. Dist. Lexis 131576, *23 (finding plaintiff

lacked standing for injunctive relief where plaintiff was now aware, through litigation, that she

could learn the amount of protein powder in the opaque container by checking the label); *Cimoli*,

546 F.Supp.3d 897 (finding no standing for injunctive relief where plaintiff could check back label

to learn the dosage in Vitamin C gummies); *but see Vizcarra,* 2020 WL 4016810 (plaintiff had

standing for injunctive relief notwithstanding ability to check ingredient list to discern if the

product contained only natural sources of vanilla flavoring to avoid deception).

    While *Davidson* came to a different outcome, the facts there were unique, leaving plaintiff

vulnerable to be injured again—irrespective of knowledge gained by the plaintiff during litigation.

889 F.3d at 961-62, 970-71.  Specifically, the plaintiff alleged that she wanted to purchase the

product in the future and might think the product had been fixed.  *Id.*  Yet the plaintiff was

powerless to confirm the veracity of the label herself before buying the product; rather, she would

again be forced to rely on the label's representation about the wipes being flushable at the time of

purchase in deciding whether to buy.  *Id.*  As the flush-friendly statement was previously shown to

be unreliable, she faced a similar, future injury—i.e., relying on a false or misleading statement to

inform her purchase.  *Id.*  Here, the Plaintiff need not purchase the product to confirm the meaning

and veracity of the label; the Plaintiff can compare it to the label on the original product without

having to purchase the product in question.  Accordingly, Plaintiff does not face a threat of

similar, future harm of being placed in a dilemma when trying to decide whether to trust the label

United States District Court
Northern District of California

1    before purchasing the product.  She thus lacks standing to assert claims for injunctive relief.  *Cf.*

2    *id.*

3    D.    Quasi-Contract, Unjust Enrichment, and Restitution

4        Defendant moves to dismiss Plaintiff's claim asserting unjust enrichment through quasi-

5    contract.  Plaintiff seeks restitution as a remedy for these claims.

6        Under California law, the elements of an unjust enrichment claim are the "receipt of a

7    benefit and [the] unjust retention of the benefit at the expense of another."  *Lectrodryer v.*

8    *SeoulBank*, 77 Cal.App.4th 723, 726 (2000).  The Ninth Circuit has construed California common

9    law to allow an unjust enrichment cause of action through quasi-contract.  *See, e.g.*, *Astiana v.*

10   *Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) ("When a plaintiff alleges unjust

11   enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking

12   restitution.'") (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221, 231

13   (2014)); *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038-39 (9th Cir. 2016) (allowing a

14   plaintiff to state a cause of action for unjust enrichment, because it states a claim for relief as an

15   independent cause of action or as a quasi-contract claim for restitution).  In other words, Plaintiff's

16   claims for quasi-contract, unjust enrichment, and restitution rise and fall together.

17       Defendant argues that Plaintiff cannot assert a quasi-contract/unjust enrichment claim

18   where she has separately alleged breach of express warranty, because a contract covers the same

19   subject matter.  Def.'s Mot. at 15.  As a matter of law, Defendant argues, a quasi-contract claim

20   for unjust enrichment "cannot lie where there exists between the parties a valid express contract

21   covering the same subject matter."  *Nguyen v. Stephens Inst.,* 529 F. Supp. 3d 1047, 1057 (N.D.

22   Cal. 2021) (citation omitted).  In response, Plaintiff argues that under the Federal Rule 8(d)(2), a

23   party may set out two or more statements of a claim or defense alternatively or hypothetically,

24   either in a single count or defense or in separate ones.

25       Plaintiff is correct that, at the pleading stage, she may alternatively allege both a breach of

26   contract claim and a quasi-contract claim. Fed. R. Civ. P. 8(d)(2).  Thus, Plaintiff's claim does not

27   fail on this basis.  However, to adequately assert quasi-contract/unjust enrichment claim, Plaintiff

28   must allege that the contract between her and Defendant was unenforceable or void.  *Saroya v.*

United States District Court
Northern District of California

*Univ. of the Pac.*, 503 F. Supp. 3d 986, 998-99 (N.D. Cal. 2020); *see also Nguyen*, 529 F.Supp.3d at 1057 (dismissing plaintiff's quasi-contract claim because he failed to allege that the contract was unenforceable or void); *Segura v. Wells Fargo Bank,* 2014 WL 4798890, at *11 (C.D. Cal. 2014) ("[T]here cannot be a claim for unjust enrichment where a contract covers the same subject matter."). Crucially, the Plaintiff here does not allege that the contract at issue is invalid or unenforceable. *See generally* Compl. Therefore, the Court grants Defendant's motion to dismiss Plaintiff's quasi-contract and related claims.

E.    Standing of Absent, Non-Californian Class Members

Plaintiff asserts violations of California's consumer protection laws on behalf of a nationwide class, i.e., on behalf of consumers that do not live in California. Compl. ¶ 25. Defendant argues that Plaintiff's nationwide claims fail because Plaintiff does not make allegations that the absent class members purchased the product or were harmed in California. Def.'s Mot. at 17. Accordingly, Defendant argues, absent Plaintiffs lack standing to assert California consume protection statute claims.

Plaintiff argues that to bring nationwide claims at the pleading stage she need only allege that the Defendant is a corporation with its principal place of business in California, which Plaintiff has alleged. Opp. at 18 (citing Compl. ¶ 11). At that point, Plaintiff argues, the burden shifts to Defendant to show, under California's choice of law rules, why California law should not apply to Plaintiff's nationwide claims. *Id.* n.8 (citing *Clay v. CytoSport, Inc*., No. 3:15-CV-00165-L-AGS, 2018 WL 4283032, at *15 (S.D. Cal. Sept. 7, 2018) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)). As Defendant has not engaged in this analysis in its motion, Plaintiff argues it has not met its burden to show Plaintiff's claims should be dismissed. *Id.* Defendant rebuts that the inquiry does not turn on the place of business of the Defendant, but rather, each Plaintiff. Reply at 10.

Plaintiff has the better argument. In *Mazza v. American Honda Motor Company*, the Ninth Circuit considered the propriety of certifying a nationwide class, alleging claims under California's consumer protect laws. 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th

United States District Court
Northern District of California

Cir. 2022).  First, the court found that the federal court sitting in diversity "looks to the forum state's choice of law rules to determine the controlling substantive law."  *Id.*  Applying California's choice of law rules, the *Mazza* court explain that the class action proponent bears the initial burden of showing whether California has "significant contact or significant aggregations of contacts" to the claims of each class member.  *Id.*  On that question, the court explained, whether a nonresident plaintiff can assert a claim under California law is, at bottom, a question whether California has sufficiently significant contacts with the plaintiff's claims.  *Id.* at 589-90.  Once that burden is met, the burden shifts to the other side to demonstrate that "foreign law, rather than California law, should apply to class claims."  *Id.* at 590.

Courts applying *Mazza* have determined that where the Defendant is incorporated and headquartered in California, this is sufficient to show there is significant contact or aggregation of contacts to the claims of the out-of-state class members to shift the burden back to defendant to demonstrate that other state laws apply.  *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (denying motion to dismiss as to nationwide claims where plaintiff alleged defendants were "headquartered in Los Angeles, California."); *see also Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 946 (C.D. Cal. 2015) (denying motion to dismiss where "Plaintiff similarly alleges that Defendant maintains a principal place of business in California.").

Here, Plaintiff similarly alleges that the Defendant is a corporation that maintains its principal place of business in California.  Compl. ¶ 11.  Accordingly, the Plaintiff set forth sufficient allegations to shift the burden back to Defendant to show why the choice-of-law analysis favors the application of foreign law to non-California consumers.  *See Mazza*, 666 F.3d at 590; *Forcellati*, 876 F. Supp. 2d at 1159-60; *Thomas*, 100 F. Supp. 3d at 946.  Because Defendant has not made such an argument, its motion to dismiss nationwide claims at this stage in the litigation is denied.

F.    Leave to Amend

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), as discussed by the Ninth Circuit

in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment.  *Eminence Capital*, 316 F.3d at 1052.  When considering these factors, "prejudice to the opposing party . . . carries the greatest weight."  *Id.*  However, a strong showing with respect to one of the other factors may warrant denial of leave to amend.  *Id.*

Defendant's motion is granted without leave to amend in relation to Plaintiff's claims for injunctive relief because Plaintiffs cannot cure the allegation with additional facts given the nature of the product at issue.  In other words, no amount of amending the complaint would render the product more akin to the flushable wipes in *Davidson*.  However, the Court cannot say with certainty that Plaintiff is unable to allege additional facts (namely the existence of a void or unenforceable contract) to cure its equitable relief claims for quasi-contract, unjust enrichment, and restitution.

## IV.    CONCLUSION

Accordingly, the Court **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss.  Defendant's motion is denied in relation to Plaintiff's CLRA, FAL, and UCL claims, breach of warranty claims, and in relation to Plaintiff's claims stated on behalf of absent non-California class members.  Defendant's motion is granted as to Plaintiff's claims for injunctive relief without leave to amend and granted as to Plaintiff's equitable claims (quasi-contract, unjust enrichment, restitution) with leave to amend.


**IT IS SO ORDERED**.


Dated: January 2, 2024


_____
EDWARD M. CHEN
United States District Judge

United States District Court
Northern District of California